25CA1380 Seba v LucidPoint 07-09-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1380
Douglas County District Court No. 24CV31212
Honorable Robert Lung, Judge

---

Kevin Seba,

Plaintiff-Appellant,

v.

LucidPoint, Inc., a Colorado corporation (purportedly through Mr. Fontaine), and Michael Fontaine,

Defendants-Appellees.

---

APPEAL DISMISSED

Division VI
Opinion by JUDGE GROVE
Gomez and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 9, 2026

---

T. Walsh Law Firm Ltd., Thomas P. Walsh, III, Greenwood Village, Colorado; Moriarty Underhill LLC, Colin E. Moriarty, Matthew H. Knaster, Greenwood Village, Colorado, for Plaintiff-Appellant

Merchant & Gould P.C., Peter A. Gergely, Ryan J. Fletcher, Kristen M. Souther, Alana L. LeFebvre, Denver, Colorado; Merchant & Gould P.C., Rachel Zimmerman Scobie, Minneapolis, Minnesota, for Defendants-Appellees

¶ 1    Plaintiff, Kevin Seba, appealed the district court's order denying his preliminary injunction motion and granting the preliminary injunction requested by defendants, LucidPoint, Inc.[1] and Michael Fontaine.  While his appeal was pending, the parties engaged in arbitration, and following a final arbitration award, Fontaine moved to dismiss Seba's appeal as moot.  After considering Seba's response to the motion, Fontaine's reply, the parties' merits briefing, and the record on appeal, we conclude that the issues raised in the opening brief are indeed moot and therefore dismiss Seba's appeal.

## I.    Background

¶ 2    LucidPoint, an information technology consulting firm, was founded by Seba and Fontaine.  Seba and Fontaine were the company's only board members and shareholders, and the two also had day-to-day positions.  In November 2023, Seba resigned from

---

[1] Because this dispute involves a battle over control of LucidPoint, Seba and Fontaine both purport to be acting on behalf of the company in some capacity.  Who actually controls LucidPoint has no bearing on the disposition of this appeal, however, so we do not consider that question.

his day-to-day responsibilities, but he remained a board member and shareholder.

¶ 3     The parties have different views about why Seba resigned, but they generally agree that there was conflict between Seba, Fontaine, and other LucidPoint employees.  After Seba's resignation, the conflict continued to escalate.

¶ 4     What followed, according to Seba, was a scheme where Fontaine "was plotting to harm LucidPoint and shut [Seba] out." Seba discovered this alleged scheme by monitoring LucidPoint's systems, including other employees' calendars and emails. Specifically, Seba found emails between Fontaine and LucidPoint's accountant that, according to Seba, proved Fontaine sought to devalue LucidPoint.

¶ 5     After more than a year of conflict, Seba sought to dissolve LucidPoint.  Seba argued that the board was "deadlocked on various issues," that LucidPoint had suffered irreparable harm from Fontaine's scheme, and that Fontaine's conduct was oppressive toward Seba as a shareholder.  Seba also moved for a preliminary injunction and requested the appointment of a receiver or custodian to manage LucidPoint's affairs.

¶ 6     Fontaine denied the allegations and brought various counterclaims against Seba, including seeking removal of Seba from the board, extreme and outrageous conduct, abuse of process, invasion of privacy by intrusion and disclosure, and breach of fiduciary duty.  Fontaine also moved for a temporary restraining order (TRO) and a preliminary injunction.

¶ 7     After a hearing, additional motions practice, and several rulings on other issues, the court denied Seba's motion for a preliminary injunction and granted Fontaine's motion for a TRO and preliminary injunction.  Under these orders, Seba was to refrain from accessing LucidPoint's systems and bank account and return LucidPoint documents and system access to other employees.

¶ 8     Seba filed a motion pointing out that, in reaching its decision on the competing motions for preliminary injunctions, the court had seemingly not considered certain emails between Fontaine and LucidPoint's accountant that Seba believed were a "smoking gun" in his favor.  Seba had some support for the inference that the court had not considered the emails given that it had previously ruled it

would not review them due to a claim of accountant-client privilege asserted by Fontaine.  But the court never ruled on Seba's motion.

¶ 9    Seba then appealed the court's injunction orders, arguing the court erroneously (1) issued a preliminary injunction without first ruling on the admissibility of the emails; (2) granted Fontaine's requested injunctive relief and denied Seba's requested injunctive relief; and (3) converted a TRO to a preliminary injunction without a hearing.

¶ 10    While Seba's appeal was pending, however, the case proceeded to arbitration.  And before we could issue an opinion, an arbitrator issued a final award in the case.  While the arbitrator largely rejected both parties' claims, she did find that Seba had breached his fiduciary duties to LucidPoint.  As a result, the arbitrator removed Seba as a director.  The arbitrator also found that Seba did not establish a director deadlock or shareholder oppression warranting LucidPoint's dissolution and instead ordered Fontaine to buy out Seba's interest in the company.  Finally, the arbitrator found that "Seba's prior unauthorized access to LucidPoint's systems, surveillance of corporate communications, interference with payroll administration, and unilateral control over corporate

4

banking authority demonstrate a substantial risk of ongoing harm absent injunctive relief." Consequently, the arbitrator permanently enjoined Seba from accessing LucidPoint's systems and bank account and ordered him to return LucidPoint's documents.

¶ 11 Following arbitration, Fontaine filed a motion in this court requesting that we dismiss Seba's appeal as moot. Seba opposed the motion, arguing that we should still reach the merits of his appeal because (1) the issues raised in his appeal are not covered by the arbitration award; (2) the court's preliminary injunction orders caused him harm; and (3) exceptions to the mootness doctrine apply.

## II. Standard of Review and Applicable Law

¶ 12 "Colorado courts invoke their judicial power only when an actual controversy exists . . . ." *People in Interest of Vivekanathan,* 2013 COA 143M, ¶ 20. A controversy becomes moot when "any relief granted by the court would have no practical effect." *DePriest v. People,* 2021 CO 40, ¶ 8. And "[i]f an event occurs while a case is pending on appeal that makes it 'impossible for the court to grant "any effectual relief" . . . to a prevailing party,' the appeal must then be dismissed as moot." *Id.* (citations omitted). We review de novo

whether an issue on appeal is moot. *Colo. Mining Ass'n v. Urbina*, 2013 COA 155, ¶ 23.

## III. Analysis

¶ 13 We conclude that the arbitrator's final award resolving the merits of the parties' dispute has rendered moot the issues that Seba raised on appeal.

### A. Scope of the Preliminary Injunction and Final Arbitration Award

¶ 14 Seba contends that we should reach the merits of his appeal because the issues he raised are not covered by the final arbitration award. We disagree.

¶ 15 The court's preliminary injunction prohibited Seba from accessing LucidPoint's systems and bank account and ordered him to return LucidPoint documents. The arbitrator's award enjoined practically the same conduct. It removed Seba as a director of LucidPoint, permanently enjoined him from accessing and monitoring LucidPoint's systems and bank account, and ordered him to return all LucidPoint documents.

¶ 16 To the extent that Seba maintains that the preliminary injunction order was erroneous because the court did not take the

so-called "smoking gun" emails into account, we conclude that no relief is available to Seba for that alleged error. Indeed, the permanent injunction enjoining the same conduct covered by the preliminary injunction is still in effect. *See Depriest,* ¶ 8.

## B. Concrete Harm

¶ 17 Seba next contends we should reach the merits of his appeal because the court's injunction orders caused him concrete harm. Specifically, Seba maintains that he suffered damages "by virtue of the fact that he was prohibited from partaking in his corporate duties due to the erroneously issued orders from the district court." In support of this proposition, he cites *International Brotherhood of Teamsters, Local Union No. 639 v. Airgas, Inc.*, 885 F.3d 230 (4th Cir. 2018), and *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999). Neither case supports his argument.

¶ 18 In *International Brotherhood of Teamsters*, the Fourth Circuit posited that "if [a] preliminary injunction was improper, the party against whom it operated would be entitled to damages for the period during which it was restrained." 885 F.3d at 236. However, this proposition applies only to circumstances where a party suffers

7

damages after the court enjoins it from doing something that it has a legal right to do. *Id.* Here, the arbitrator found that Seba engaged in "dishonest conduct and gross abuse of authority" by "exercis[ing] unilateral control over corporate systems," "enabl[ing] and us[ing] monitoring tools without disclosure," "interfer[ing] with payroll administration during an active governance dispute," and "exercis[ing] control over corporate funds without authorization." Based on these findings, among others, the arbitrator issued a permanent injunction enjoining the same conduct that had been enjoined by the preliminary injunction.

¶ 19     *Grupo Mexicano* does not support Seba's position either. Indeed, in that case, the Supreme Court affirmed that an appeal of a preliminary injunction is moot if "[t]he final injunction establishes that the [party] should not have been engaging in the conduct that was enjoined," even if preliminary injunction was "not procedurally correct." 527 U.S. at 315.

¶ 20     Accordingly, we reject Seba's argument that we should reach the merits of his appeal on the grounds that the court's injunction orders allegedly caused him harm.

## C. Mootness Exceptions

¶ 21    Finally, Seba argues that two exceptions to the mootness doctrine apply: (1) the matter involves an issue that is capable of repetition, yet evades review; and (2) the matter involves a question of great public importance.  *See People in Interest of Ofengand*, 183 P.3d 688, 691 (Colo. App. 2008); *Gresh v. Balink*, 148 P.3d 419, 422 (Colo. App. 2006).  We disagree.

¶ 22    Issues are capable of repetition when they could, or are likely to, reoccur in the future, *Ofengand*, 183 P.3d at 692; and issues "evad[e] review" when the "time required to complete the legal process will necessarily render each specific challenge moot," *Rocky Mountain Ass'n of Credit Mgmt. v. Dist. Ct.*, 565 P.2d 1345, 1346 (Colo. 1977) (citation omitted).  Here, there is no possibility that the same controversy will recur because Seba is no longer a director or shareholder of LucidPoint, and he has been permanently enjoined from accessing LucidPoint's systems and accounts.  As a result, the issues raised by Seba on appeal are not capable of repetition.  *See Anderson v. Applewood Water Ass'n*, 2016 COA 162, ¶ 30.

¶ 23    Likewise, we do not find the issues raised by Seba to be of great public significance.  Seba's case is a party-specific, private

dispute that has been resolved through arbitration. It does not affect the public at large. *Cf. People v. Garcia*, 2014 COA 85, ¶ 23 (issue only concerned one defendant without implicating matters of public importance). Further, the evidentiary and notice rules for injunctive relief are well established in the rules of procedure and in case law. *See* C.R.C.P. 65 (rules governing injunctive relief); *see also Network Telecomms., Inc. v. Boor-Crepeau*, 790 P.2d 901, 903 (Colo. App. 1990) (a trial court's injunction decision must be "predicated upon its examination of substantial competent evidence presented").

¶ 24    Accordingly, neither mootness exception applies to the issues raised in Seba's appeal.

## IV.    Disposition

¶ 25    The appeal is dismissed as moot.

JUDGE GOMEZ and JUDGE MOULTRIE concur.